STATE OF NORTH CAROLINA v. NORBERT GLEN RICHARDSON

No. 89

(Filed 14 July 1978)

1. **Indictment and Warrant § 5— foreman's signature—number of concurring jurors—certification stamped on bill**

   Defendant's motion to dismiss the bill of indictment on the ground that it failed to state the number of qualified jurors who concurred in the finding of the bill in violation of G.S. 15A-644(a)(5) was properly denied since the bill of indictment bore the signature of the foreman of the grand jury immediately beneath the language which had been stamped thereon and which would have read, had the stamp been properly applied: "This is to certify that 12 or more members of the grand jury were present and concurred in the finding of this bill of indictment."

2. **Rape § 6— first degree rape—toy gun not a deadly weapon—instruction not required**

   In a prosecution for first degree rape, the trial court was not required to instruct the jury that a toy gun was not a deadly weapon and that, if the jury believed that defendant used a toy gun in the perpetration of the rape charged, then the jury must find defendant not guilty of first degree rape, since the significance of a deadly weapon was graphically and correctly pointed out by the court, and the charge as given properly required the State to prove beyond a reasonable doubt that defendant overcame his victim's resistance and procured her submission by the use of a deadly weapon, *i.e.*, a weapon which was likely to cause death or serious bodily injury.

3. **Criminal Law 8 138.9— consecutive sentences—credit for time served—computation incorrect**

Where defendant was given a life sentence for rape, ten years for felonious breaking or entering to begin at the expiration of the life sentence, and ten years for crime against nature to begin at the expiration of the ten-year sentence imposed for the felonious breaking or entering, defendant received one sentence of 100 years for purposes of determining credit for pre-conviction incarceration, and it therefore made no difference to which one of the consecutive sentences the credit was applied; however, the trial court erred in computing the amount of credit as 154 days instead of 155 days, since the time from 4 May, the date of defendant's arrest, to 6 October, the day the sentences were pronounced and commitments issued, should have been computed by excluding the first day and including the last.

4. **Criminal Law § 76.5— voir dire—time for setting out findings and conclusions—defendant not prejudiced**

Though it would have been the better practice for the trial court to make findings of fact and conclusions of law with respect to the admissibility of defendant's statements and the admissibility of evidence which defendant contended had been illegally obtained at the time such evidence was tendered and before it was admitted, defendant failed to show that he was prejudiced by the court's manner of entering its findings and conclusions, since any proposed findings of fact defendant wished to submit could have been tendered to the trial court at the conclusion of the voir dire hearing or any time thereafter during the course of the trial, and any objections defendant wished to make to the findings and conclusions which the court belatedly entered would be considered by the appellate courts.

5. **Criminal Law § 75.1— delay in taking defendant before magistrate—confession not rendered inadmissible**

No constitutional principle of law requires the exclusion of defendant's confession simply because it was made during a four and one-half hour delay in bringing the defendant before a judicial official. G.S. 15A-501.

6. **Criminal Law § 75; Searches and Seizures § 43— violation of Criminal Procedure Act—when evidence admissible**

If challenged evidence would have been obtained regardless of violation of G.S. Chapter 15A, such evidence has not been obtained "as a result of" such official illegality and is not, therefore, to be suppressed by reason of G.S. 15A-974(2).

7. **Criminal Law § 75.1— delay in taking defendant before magistrate—confession admissible**

Defendant's confessions were not a result of a substantial violation of G.S. Chapter 15A and not inadmissible under G.S. 15A-974(2) because there was a four and one-half hour delay in bringing defendant before a magistrate during which time defendant by reason of the delay was not advised concerning his right to communicate with friends where defendant did not contend that the minimal delay in being informed of this right played any causal role in his decision to admit his involvement in the crimes charged.

State v. Richardson

8. **Searches and Seizures § 43— search of defendant's premises—failure to give receipt for seized items—evidence admissible**

   Defendant's contention that evidence seized by officers during searches of defendant's toolbox and residence should have been excluded because officers failed to comply with G.S. 15A-223(b) which requires that a list of items seized pursuant to a consent search be compiled and embodied in a receipt which must be given to the person who consented to the search is without merit since failure to comply with G.S. 15A-223(b) has no constitutional significance within the meaning of G.S. 15A-974(1), and G.S. 15A-974(2) is likewise inapplicable, the items seized and later offered into evidence not being "obtained as a result of" violation of Chapter 15A.

9. **Criminal Law § 76.5— confession—no conflict in evidence on voir dire—findings unnecessary**

   Since there was no conflict in the evidence concerning the circumstances under which defendant's confession was made, it was not prejudicial error for the trial court to fail to make findings of fact relating thereto.

10. **Criminal Law § 76.2— confession used for impeachment—no coercion alleged—voir dire unnecessary**

    Drawings and statements by defendant were admissible for impeachment purposes, though the trial court conducted no voir dire to determine their voluntariness, since defendant made no contention that the drawings or statements were coerced or involuntary in fact.

11. **Criminal Law § 76.2— confession used for impeachment—challenge on ground of coercion—voir dire required**

    When a confession is used on rebuttal for impeachment purposes and a defendant specifically challenges the admissibility of the confession on the ground that it was coerced or "induced by improper means," a voir dire hearing must be held for the purpose of determining whether the trustworthiness of the confession satisfies this State's legal standards.

DEFENDANT appeals from judgments of *Browning, J.*, 3 October 1977 Session, PITT Superior Court.

Defendant was charged in separate bills of indictment, consolidated for trial, with (1) felonious breaking or entering of the Patrick and Joyce Barfield residence, located at Route 3, Stokes, North Carolina, with intent to commit rape therein, (2) crime against nature with Joyce Barfield and (3) first degree rape of Joyce Barfield, all on 3 May 1977.

The State's evidence tends to show that on 3 May 1977 Patrick Barfield left home for work at 6:25 a.m. and saw defendant Richardson on the edge of the parking lot at Roebuck and Parker's Store walking toward Mr. Barfield's home. He had seen

defendant several times in and around Stokes and recognized him on this occasion.

Mrs. Joyce Barfield heard her dog barking shortly after her husband left and looked out the window of her bedroom but did not see anything. In a few moments she heard a thump on the front porch, then steps in the living room, and then saw a man with a stocking tied around his face and with a gun in his hand pointed at the ceiling. The stocking he wore on his face was thick like a support hose but the area above the tip of his nose, including his eyes and a portion of his forehead and part of his hair, was not covered by the stocking. After closing the door to the children's bedroom, the intruder pushed Mrs. Barfield down on the bed, put the gun barrel between her eyes and said he was going to kill her and the children unless she behaved and cooperated. He then forced her to have oral sex with him after which he raped her and left. Her assailant was a white male who appeared to be about her husband's height and was wearing dirty off-white leather gloves, an off-white suit and a dark shirt with a paisley print on it. After his departure Mrs. Barfield called her husband and officers were alerted.

Defendant was picked up at 11:30 a.m. on the same day, advised of his rights, and agreed to talk with the officers. He denied committing the crimes and voluntarily permitted the deputies to search his residence. They did so and confiscated a pair of pants and a coat which Mrs. Barfield later identified as garments worn by the man who assaulted her. At 2 p.m. on the same day, after again being warned of his constitutional rights and waiving them, defendant made another statement denying all culpability. At 6:30 p.m. the same day, after again being warned of his rights and waiving them, defendant agreed to stand in a lineup and was positively identified by Mrs. Barfield as the man who raped her. After the lineup he was questioned again, and this time he admitted seeing Mrs. Barfield's husband leave for work and stated that he then went to the Barfield home with a toy pistol in hand and a stocking over his head and raped Mrs. Barfield after forcing her to commit oral sex upon him. He described in detail the Barfield house and the acts which took place. He said he entered through the front door which was unlocked. He took the officers to a place where he said he had thrown the "toy" gun and the stocking, but these items were not found. At 1 p.m. the following afternoon,

defendant confessed again and led deputies in a search for the gun but it was never found. He consented to a search of his toolbox in which a pair of gloves was found and later identified by Mrs. Barfield as the gloves defendant wore when he entered her home and raped her.

Defendant testified in his own behalf. His testimony tends to show that on the morning of 3 May 1977 he first arose at 6 a.m. but laid back down and finally got up at 7:15 a.m. He talked to Mr. Carter Crandall on his CB radio at about 7:15 a.m. or 7:20 a.m. and then left his home for work at approximately 7:45 a.m. He walked to the post office in Stokes where he mailed a letter, then rode with Stan Cherry in his truck to Crandall's Grocery, stopping on the way to purchase pipe tobacco at Roebuck and Parker's Store. He got out of the Cherry vehicle at Clark Crandall's Store about 8:10 a.m. and thereafter worked for Mr. Crandall until he was first approached by police officers at 11:30 a.m. Defendant denied entering the Barfield home, raping or otherwise molesting Mrs. Barfield.

With respect to his various confessions, oral and written, defendant said: "The first statement that I made that was written down . . . is not what happened. I signed it out of impulse. . . . I came up with the idea that it was a toy pistol, I was taking a wild guess. I just said it was a toy gun. I did not come up with the idea about putting the stocking over my face. I don't remember if I drew a picture of this pistol for Deputy Sheriff Moye. I don't remember how in the world I drew a picture of the pistol I used in the commission of the crime when I don't even have the pistol. I can't tell you whether State's Exhibit 8 is the floor plan of the house that I drew. I guess that I drew one. . . . I had already gotten nervous and shook up. I have hypertension. . . . I carried them out there to try to help them find that gun and stockings on two different times. . . . I was pretty well scared already. It was my hypertension. . . . I do not rape women. . . . I further signed saying that no one had made me any threat or forced me into signing these statements and no one had offered me any reward or hope of reward for making the statement. That was the truth."

Defendant emphasized that he made the various confessions and signed them because he was tired and hungry. He denied knowing Mrs. Barfield or knowing where she lived. He said he

told the sheriff that Mr. Barfield was wearing a cowbody hat that morning because he had seen the man once before at Mr. Crandall's Store and he was wearing his cowboy hat. Defendant said he was twenty-nine years of age.

Stan Cherry testified that he picked up defendant at the post office at approximately 8 a.m., stopped at Roebuck and Parker's so defendant could get some tobacco, and then carried him to Crandall's Store, arriving there at 8:10 a.m.

Carter Crandall testified that the first conversation he had with defendant on the CB that morning was at 7:20 a.m.

Cecil Crandall testified that defendant worked for him from 8:10 a.m. until he was picked up by the police at 11:30 a.m. on the morning of 3 May.

The State's rebuttal evidence tends to show that, in his confession, defendant described the Barfield house and its surroundings in detail and drew a diagram (State's Exhibit 8) accurately depicting the floor plan. He told the officers how to get to the Barfield house and described a certain Pepsi-Cola sign, an "old timey" well, a fake well in the front yard, and the screen porch on the house. He told about a garden and an open field and a thick woodland on one side. All these references were very accurate. He also told the officers about a dog and there was a dog there.

State's evidence on rebuttal further tends to show that it takes sixteen minutes to walk from the Barfield house to defendant's house by the longest route. Taking available shortcuts, the distance between the two houses may be traversed in much less time.

The jury found defendant guilty as charged in each case. He was sentenced to life imprisonment for the rape, ten years for crime against nature and ten years for felonious breaking or entering, to run consecutively. Defendant appealed the life sentence to the Supreme Court, and we allowed motion to bypass the Court of Appeals in the other two cases to the end that initial appellate review be afforded in all cases by this Court.

*Rufus L. Edmisten, Attorney General, by Rudolph A. Ashton III, Associate Attorney, for the State of North Carolina.*

*Russell Houston III, attorney for defendant appellant.*

HUSKINS, Justice.

[1]  In the felonious breaking or entering case (77Cr7468), defendant moved to dismiss the bill of indictment on the ground that it fails to state the number of qualified grand jurors who concurred in the finding of the bill. Denial of this motion constitutes defendant's first assignment of error.

Defendant relies on G.S. 15A-644(a)(5) which provides that an indictment must contain the signature of the foreman or acting foreman of the grand jury attesting the concurrence of twelve or more grand jurors in the finding of a true bill of indictment.

G.S. 15A-621 defines "grand jury" in these words: "A grand jury is a body consisting of not less than 12 nor more than 18 persons, empaneled by a superior court and constituting a part of such court."

G.S. 15A-623(a) provides: "The finding of an indictment, the return of a presentment, and every other affirmative official action or decision of the grand jury requires the concurrence of at least 12 members of the grand jury."

The bill of indictment here in question bears the signature of the foreman of the grand jury immediately beneath the following language which has been stamped thereon: "[Illegible] is to certify that [illegible] or more members of the grand jury were present and concurred in the finding of this bill of indictment." It is quite apparent that the stamped language was placed on the bill of indictment at the time it was returned a true bill for the purpose of complying with G.S. 15A-644(a)(5). Had the stamp been properly applied, the certificate would have read: "This is to certify that 12 or more members of the grand jury were present and concurred in the finding of this bill of indictment." Such a certification is implicit in the presence of the foreman's signature upon the bill of indictment immediately beneath the stamped message. Had less than twelve members of the grand jury concurred in the finding of this bill of indictment, there would have been no stamped certificate whatsoever on the bill and no signature of the foreman. To hold otherwise would produce a ridiculous result and elevate form over substance.

The question posed by this assignment has been answered by this Court in *State v. House*, 295 N.C. 189, 244 S.E. 2d 654 (1978). There Justice Lake, writing for the Court, said:

"In the present case, the indictment bears the signature of the foreman of the grand jury beneath the statement that the bill was found 'a true bill' and the witnesses whose names were marked with an 'X' were sworn by the foreman and examined by the grand jury. Since the statute requires the concurrence of at least 12 members of the grand jury in order to find an indictment a true bill, the foreman's signature attesting that the grand jury found the indictment to be a true bill, necessarily attests the concurrence of at least 12 of its members in this finding.

Although it is better practice for the foreman's entry upon the bill of indictment, over his signature, to state expressly that 12 or more grand jurors concurred in such finding, . . . this is not necessary to the validity of the bill of indictment where the foreman's statement upon the bill is clearly so intended and there is nothing to indicate the contrary."

There is no merit in defendant's position and his first assignment is overruled.

[2] Defendant requested the court to instruct the jury that "a toy gun is not a deadly weapon" and assigns as error the failure of the court to instruct the jury "that if it believed from the evidence that the object the defendant carried into the bedroom was not a real pistol but was a toy pistol, then the jury could not find that the victim's submission was procured by use of a deadly weapon, and it would be the jury's duty to return a verdict of not guilty of first degree rape." This constitutes defendant's second assignment of error.

The record discloses the following charge on first degree rape:

"Now, I charge you that in order for you to find the defendant guilty of first degree rape, the State of North Carolina must prove to you beyond a reasonable doubt five things. The first thing is that the defendant had sexual intercourse with Joyce Ann Barfield. The second thing is that the defendant used or threatened to use force sufficient to overcome any resistance that she might make. Third, that Joyce Ann Barfield did not consent and that it was against her will.

Fourth, that the defendant overcame her resistance and procured her submission by the use of a deadly weapon. A deadly weapon is a weapon which is likely to cause death or serious bodily injury. I instruct you that a pistol is a deadly weapon. And fifth, that at the time the defendant was more than 16 years of age. So, I charge that if you find from the evidence and beyond a reasonable doubt that on or about May 3, 1977, Norbert Glen Richardson was more than 16 years of age and had sexual intercourse with Joyce Ann Barfield without her consent, and against her will, and forcibly overcame her resistance and procured her submission by the use of a deadly weapon it would be your duty to return a verdict of guilty of first degree rape. However, if you do not so find, or *if you have a reasonable doubt as to any one of the five things which I just talked about, it would be your duty to return a verdict of not guilty of first degree rape.*" (Emphasis added.)

Following the foregoing charge on first degree rape, the trial judge instructed on second degree rape and specifically stated that the use of a deadly weapon was not required to convict an accused of rape in the second degree. Thus the significance of a deadly weapon was graphically and correctly pointed out. The jury obviously was convinced that a real pistol was used. The verdict on this point is quite understandable in view of the victim's description of the gun and the fact that defendant took the stand as a witness in his own behalf and testified under oath that he did not rape Mrs. Barfield and just "made up" the story about the toy pistol.

The court is not required to give an instruction in the exact language of the request. *State v. Spicer*, 285 N.C. 274, 204 S.E. 2d 641 (1974). Of course, it would have been quite proper for the court to charge the jury here that a toy pistol is not a deadly weapon, but refusal to do so was not error. We hold the charge as given properly required the State to prove beyond a reasonable doubt that defendant overcame Mrs. Barfield's resistance and procured her submission by the use of a deadly weapon, *i.e.*, a weapon which is likely to cause death or serious bodily injury. If the jury had a reasonable doubt about that aspect of the case it was instructed to return a verdict of not guilty of first degree rape. Defendant's second assignment is overruled.

[3]   Defendant was given a life sentence for rape, ten years for felonious breaking or entering to begin at the expiration of the life sentence, and ten years for crime against nature to begin at the expiration of the ten-year sentence imposed for the felonious breaking or entering. The ten-year sentence for felonious breaking or entering was then credited with 154 days for time spent in confinement pending trial. Defendant contends the trial court should have allowed this credit on the first degree rape sentence. This constitutes his third assignment of error.

The record shows that defendant was first arrested on a warrant charging first degree rape, dated and served on 4 May 1977. He was later arrested for felonious breaking or entering and for crime against nature on warrants dated and served 5 May 1977. At that time defendant was already in custody under the rape warrant and had served one day in jail.

G.S. 14-2 provides in pertinent part: "A sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the State's prison."

G.S. 15-196.1 provides in pertinent part:

"The term of a determinate sentence or the minimum and maximum term of an indeterminate sentence shall be credited with and diminished by the total amount of time a defendant has spent . . . in confinement . . . as a result of the charge that culminated in the sentence. The credit provided shall be calculated from the date custody under the charge commenced and shall include credit for all time spent in custody pending trial, trial de novo, appeal, retrial, or pending parole and probation revocation hearing . . . ."

G.S. 15-196.2 provides in pertinent part:

"In the event time creditable under this section shall have been spent in custody as the result of more than one pending charge, resulting in imprisonment for more than one offense, credit shall be allowed as herein provided. Consecutive sentences shall be considered as one sentence for the purpose of providing credit, and the creditable time shall not be multiplied by the number of consecutive sentences for which a defendant is imprisoned."

Applying the quoted statutes to the facts before us, defendant received one sentence of 100 years for purposes of determining credit for pre-conviction incarceration. It makes no difference, therefore, to which of the consecutive sentences the credit is applied. Defendant will be eligible for parole and other privileges at the same time regardless of which of the consecutive sentences is credited. The trial court did err, however, in computing the amount of credit as 154 days. Defendant was arrested on the rape charge on 4 May 1977. The three consecutive sentences to State's prison were pronounced and commitments issued on 6 October 1977. The time from 4 May to 6 October is computed by excluding the first day and including the last. Defendant is therefore entitled to credit for 155 days instead of 154, and the judgment and commitment in the felonious breaking or entering case, docket No. 77CrS7468, will be corrected accordingly. Otherwise, there is no merit in defendant's third assignment of error.

[4] Upon defendant's objection to the introduction of various confessions attributed to him and to the fruits of various searches and seizures made by the investigating officers, the court conducted an extensive voir dire covering twenty pages of the record. At the conclusion of the voir dire hearing the court said: "Now, I am not going to enter the formal findings of fact and conclusions of law, as they will be very lengthy. I will do that prior to the close of the trial and place them on the record. The general conclusion at that time will be that the motion of the defendant, the motions, all of them are denied, and that the statements, the search, were made in such a manner as did not violate the constitutional rights of this defendant."

Thereafter, at a time not disclosed by the record, the court made lengthy findings of fact and conclusions of law supporting admission of the evidence and formally denying all motions to suppress it. These findings and conclusions appear in the record underneath the following notation: "Dictated into the record by the court as indicated during the trial at the conclusion of the third voir dire hearing."

Defendant's fourth assignment of error challenges the foregoing procedure. Defendant contends the findings of fact and conclusions of law on the third voir dire hearing "were dictated into the record after entry of judgment and in the absence of defense

counsel" as a result of which counsel could not make objections to the findings or conclusions when they were dictated into the record by the court. Defendant says he "was directly prejudiced by this procedure because defense counsel anticipated requesting that certain specific findings of fact be made . . . and anticipated making objections to certain conclusions of law. . . ."

In *State v. Doss*, 279 N.C. 413 at 424, 183 S.E. 2d 671 at 678, *death sentence vacated* 408 U.S. 939 (1972), this Court noted that "it is better practice for the court to make [findings of fact] at some stage during the trial, preferably at the time the [defendant's inculpatory] statement is tendered and before it is admitted." This admonition is equally applicable to findings of fact and conclusions of law respecting the admissibility of evidence which defendant contends has been illegally obtained. *See generally State v. Vestal*, 278 N.C. 561, 578, 180 S.E. 2d 755, 766 (1971).

In the present case we need not determine whether the trial court's failure to follow what was described in *Doss* as "better practice" constitutes error. If we assume *arguendo* (defendant has made no showing that the court's findings and conclusions were in fact belatedly entered) that the trial court did enter its findings of fact and conclusions of law after the trial was over, defendant has failed to show he has been prejudiced thereby. Any proposed findings of fact defendant wished to submit could have been tendered to the trial court at the conclusion of the voir dire hearing or thereafter during the course of the trial. Any objections defendant wished to make to the findings of fact and conclusions of law which the trial court belatedly entered following voir dire will be considered by appellate courts of this State just as fully as if defendant had specifically objected to the findings or conclusions at the time they were entered. Since defendant has failed to demonstrate any prejudice resulting from the manner in which the trial court entered its findings and conclusions, his fourth assignment of error must be overruled. *See State v. Hill*, 294 N.C. 320, 240 S.E. 2d 794 (1978); *State v. Williams*, 34 N.C. App. 386, 238 S.E. 2d 195 (1977).

By his fifth, sixth and seventh assignments of error, defendant challenges the admissibility of his two confessions made at 12:15 a.m. and 1 p.m. on 4 May 1977. He contends that uncontradicted evidence adduced on voir dire indicates he was under

arrest from the time Mrs. Barfield identified him at approximately 8:30 p.m. on 3 May 1977. Defendant was not served with an arrest warrant or brought before a magistrate, however, until approximately 1 a.m. on the morning of 4 May. His first confession was elicited during this four and a half hour interlude. Hence, defendant argues that the officers failed to comply with G.S. 15A-501 which provides, *inter alia,* that "upon the arrest of a person . . . a law enforcement officer: (2) Must . . . take the person arrested before a judicial official without unnecessary delay." He further argues that the officers' failure to comply with G.S. 15A-501 constitutes a "substantial violation" of the provisions of Chapter 15A, that his confession was obtained as a result of this violation, and accordingly should have been suppressed pursuant to G.S. 15A-974.

G.S. 15A-974 provides: "Upon timely motion, evidence must be suppressed if: (1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina; or (2) It is obtained as a result of a substantial violation of the provisions of this Chapter. . . ." If it be assumed, for purposes of argument, that the four and a half hour delay was, under the circumstances, an "unnecessary delay" within the meaning of that phrase as used in G.S 15A-501, and if it further be assumed that such unnecessary delay constitutes a "substantial violation" of Chapter 15A of the General Statutes, defendant's argument is nonetheless without merit. We reach this conclusion because, even under the foregoing assumptions, exclusion of defendant's confessions is not required by Federal or State Constitutions (see G.S. 15A-974(1)) and because we are satisfied defendant's confessions were not obtained "*as a result of*" the assumed substantial violation of G.S. 15A-501 (see G.S. 15A-974(2)).

[5]    No constitutional principle of law requires the exclusion of a confession simply because it was made during a four and a half hour delay in bringing the defendant before a judicial official. In *McNabb v. United States*, 318 U.S. 332, 87 L.Ed. 819, 63 S.Ct. 608 (1943), it was held that federal officers' failure to comply with statutory directives requiring arrested persons to be brought before a judicial officer rendered an ensuing confession inadmissible. Numerous cases, federal and state, make clear that this exclusionary rule is not of constitutional stature. *Culombe v. Connecticut*, 367 U.S. 568, 6 L.Ed. 2d 1037, 81 S.Ct. 1860 (1961); *Brown v.*

*Allen,* 344 U.S. 443, 97 L.Ed. 469, 73 S.Ct. 397 (1953); *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53 (1969); *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365 (1960). *See* Annot., 19 A.L.R. 2d 1331 (1951); McCormick, Evidence § 155 (2d ed. 1972). Confessions elicited by in-custody interrogation need not be excluded from evidence on constitutional grounds so long as such confessions are voluntary (*see Culombe v. Connecticut, supra; State v. Pruitt,* 286 N.C. 442, 212 S.E. 2d 92 (1975) ), are obtained without violation of the accused's right to remain silent and to be represented by counsel (*see Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966) ), and are not the "fruit of official illegality" proscribed by constitutional principles (*Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed. 2d 441, 83 S.Ct. 407 (1963); *State v. Eubanks,* 283 N.C. 556, 196 S.E. 2d 706 (1973) ). *See generally* McCormick, Evidence §§ 144-63 (2d ed. 1972); Stansbury's North Carolina Evidence §§ 183-84 (Brandis rev. 1973). In the present case we have assumed, *arguendo,* that the delay in bringing defendant before a judicial officer was a violation of G.S. 15A-501. Even under this assumption, however, no constitutionally mandated exclusionary rule bars the admission of defendant's confession. It follows that G.S. 15A-974(1) does not require that defendant's confession be suppressed.

G.S. 15A-974(2) provides that evidence "obtained as a result" of a substantial violation of the provisions of Chapter 15A must, upon timely motion, be suppressed. The use of the term "result" in this statute indicates that a causal relationship must exist between the violation and the acquisition of the evidence sought to be suppressed. The comment of the drafters of G.S. 15A-974 affords no insight into the sort of causal connection contemplated (see Criminal Code Commission, *Legislative Program and Report to the General Assembly of North Carolina* at 238 (1973) ); and research has disclosed no cases throwing light on the matter. Cases construing the scope of the exclusionary rule required by federal constitutional principles are quite numerous, however, and these cases indicate that, *at a bare minimum,* there must be a "cause in fact" or "but-for" relationship between the unconstitutional conduct and the evidence sought to be suppressed. *See, e.g., Brown v. Illinois,* 422 U.S. 590, 45 L.Ed. 2d 416, 95 S.Ct. 2254 (1975); *Harrison v. United States,* 392 U.S. 219, 20 L.Ed. 2d 1047, 88 S.Ct. 2008 (1968); *Wong Sun v. United States, supra; United*

*States v. Carino*, 417 F. 2d 117 (2d Cir. 1969); *State v. Branch*, 288 N.C. 514, 543, 220 S.E. 2d 495, 515, *cert. denied*, 433 U.S. 907 (1977). Under these and other cases of like import, evidence will not be suppressed unless it has been obtained *as a consequence* of the officer's unlawful conduct (*e.g.*, an unconstitutional search or arrest). The evidence must be such that it would not have been obtained *but for* the unlawful conduct of the investigating officer.

[6] We are of the opinion that G.S. 15A-974(2) requires, at a minimum, this sort of causal connection between violations of Chapter 15A and the evidence objected to if such evidence is to be suppressed. In so holding, we do not decide that a mere "cause in fact" or "but-for" relationship is sufficient *ipso facto* to require exclusion of evidence obtained as a consequence of substantial violations of Chapter 15A. In certain cases, intervening circumstances might "dissipate the taint" of unlawfulness so that such evidence would be admissible at trial. *See, e.g., Wong Sun v. United States, supra* (holding admissible certain evidence which would not have been obtained but for violations of constitutional requirements). We leave all such decisions to future cases. For present purposes, we merely hold that if the challenged evidence would have been obtained regardless of violation of Chapter 15A, such evidence has not been obtained "as a result of" such official illegality and is not, therefore, to be suppressed by reason of G.S. 15A-974(2).

[7] In the present case defendant's confession is not, in our opinion, causally related to the four and a half hour delay in bringing defendant before a judicial official. Had defendant been promptly brought before a magistrate, he would have been advised of (1) the charges against him, (2) his right to communicate with counsel and friends and (3) the general circumstances under which he could secure pretrial release. G.S. 15A-511(b). The record indicates that as of 20 May 1977 defendant had not been released on bond, though he had some two weeks earlier been brought before a magistrate and, presumably, informed of and afforded the rights to pretrial release required by G.S. 15A-511(e) and Article 26 of Chapter 15A. The record also indicates that the officers had repeatedly advised defendant of (1) the charges against him or the crime he was suspected of having committed, (2) his right to counsel prior to answering any questions, and (3) his right to obtain appointed counsel free of charge if he could not afford to hire a lawyer. Thus, the only benefit denied defendant by reason of the delay in bringing him before a magistrate was advice concern-

ing his right to communicate with friends. Defendant does not argue that the minimal delay in being informed of this right played any causal role in his decision to admit his involvement in the assault and rape of Mrs. Barfield. Under these facts we are of the opinion that the confessions did not result from such delay. We therefore hold that defendant's confessions were not a result of a substantial violation of Chapter 15A and not inadmissible under G.S. 15A-974(2).

Defendant's fifth, sixth and seventh assignments of error are overruled.

[8] By his eighth, ninth and tenth assignments of error defendant contends evidence seized by officers during searches of defendant's residence and toolbox should have been excluded. He argues that the officers failed to comply with G.S. 15A-223(b), which requires that a list of items seized pursuant to a consent search be compiled and embodied in a receipt which must be given to the person who consented to the search. It is contended that this failure to provide defendant with such a receipt renders inadmissible the evidence seized in the consent search of his residence and toolbox.

We find no merit in these assignments because (1) failure to comply with G.S. 15A-223(b) has no constitutional significance within the meaning of G.S. 15A-974(1), and (2) G.S. 15A-974(2) is likewise inapplicable. It is clear that the items seized and later offered into evidence were not "obtained as a result of" violations of Chapter 15A. No causal connection exists between the failure to follow the requirements of G.S. 15A-223(b) and the acquisition of the items seized from defendant's residence and toolbox. Defendant's eighth, ninth and tenth assignments of error are overruled.

Defendant's eleventh assignment of error challenges the sufficiency of the trial court's findings of fact concerning the admissibility of (1) defendant's second confession (made at approximately 1 p.m. on 4 May) and (2) defendant's statements and two drawings made by him (one of the floor plan of the Barfield home, the other of the pistol defendant used). Defendant's second confession was introduced by the State in its case in chief; the other items were offered in rebuttal after defendant had testified and denied any involvement in the crimes charged. Defendant contends the trial court's voir dire findings of fact make no specific reference to any of these items and, in the absence of specific findings of fact that defendant made such statements and drawings voluntarily, their admission was error.

[9]   We have carefully examined the testimony introduced at the voir dire hearing. All testimony concerning the 1 p.m. 4 May confession is to the same effect: defendant, after proper warnings and without having been threatened or offered any hope of reward, verbally and in writing waived his right to counsel and agreed to make a statement. Since there is no conflict in the evidence concerning the circumstances under which the 1 p.m. 4 May confession was made, it was not prejudicial error for the trial court to fail to make findings of fact relating thereto. *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Frank*, 284 N.C. 137, 200 S.E. 2d 169 (1973). All the evidence supports the trial court's conclusion that the confession was admissible. No error was committed by admitting this confession into evidence.

[10]   Defendant's drawings and other statements were introduced by the State for impeachment purposes after defendant had testified and denied any involvement in the rape of Mrs. Barfield. In *Harris v. New York*, 401 U.S. 222, 28 L.Ed. 2d 1, 91 S.Ct. 643 (1971), and *Oregon v. Hass*, 420 U.S. 714, 43 L.Ed. 2d 570, 95 S.Ct. 1215 (1975), the United States Supreme Court held that inculpatory evidence initially inadmissible in the prosecution's case in chief under *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), was competent on rebuttal for impeachment purposes when defendant testified at trial and his testimony was inconsistent therewith. Both *Harris* and *Hass* indicate, however, that such evidence is admissible "provided . . . the trustworthiness of the evidence satisfies legal standards." 401 U.S. at 224, 28 L.Ed. 2d at 4, 91 S.Ct. at 645; 420 U.S. at 722, 43 L.Ed. 2d at 577, 95 S.Ct. at 1221. By this proviso the Supreme Court apparently sought to limit its holding to those cases in which the defendant "makes no claim that the statements made to police were coerced or involuntary." *Harris v. New York, supra,* at 224, 28 L.Ed. 2d at 4, 91 S.Ct. at 645. In *State v. Bryant*, 280 N.C. 551, 187 S.E. 2d 111, *cert. denied*, 409 U.S. 995 (1972), this Court held, in accordance with *Harris*, that defendant's in-custody admissions were admissible for impeachment purposes. In *Bryant*, as in *Harris*, no voir dire hearing was conducted when defendant objected to the use of his admissions for impeachment purposes, and no findings of fact were made by the trial court regarding the voluntariness of defendant's admissions.

In the present case several voir dire hearings were conducted, but in none of these hearings was any reference made to defendant's drawings and statements which the State offered in

rebuttal after defendant testified and denied any involvement in the rape of Mrs. Barfield. Consequently, the trial court made no findings as to whether such drawings and statements were made voluntarily. Just as in *Bryant* and *Harris*, however, defendant in the present case made no contention that these drawings and statements were coerced or involuntary in fact. Accordingly, the drawings and statements were admissible for impeachment purposes under the rule enunciated in *Harris* and *Bryant*.

It has long been the rule in this jurisdiction that confessions induced by force, threat, fear or promise of reward are inadmissible. *See generally* Stansbury, North Carolina Evidence § 184 (Brandis rev. 1973). Prior to the *Miranda* decision the weight of authority held that such coerced confessions were inadmissible *for any purpose*. Annot., 89 A.L.R. 2d 478 (1963). This majority view had been favorably alluded to in *State v. Meadows*, 272 N.C. 327, 336, 158 S.E. 2d 638, 644 (1968), and neither *Bryant* nor our holding here should be regarded as authority to the contrary.

[11] We further note that *Harris v. New York*, supra, sanctions the denial of a voir dire hearing when a general objection is made to the use of *Miranda*-barred confessions for impeachment purposes. However, this Court has held as a matter of State law that "when the admissibility of a confession is challenged on the ground that it was induced by improper means, the trial judge is required to determine the question of fact whether it was or was not voluntary before he permits it to go to the jury." *State v. Rogers*, 233 N.C. 390, 396, 64 S.E. 2d 572, 576 (1951). *Accord, State v. Davis*, 253 N.C. 86, 116 S.E. 2d 365 (1960). When a confession is used on rebuttal for impeachment purposes and a defendant *specifically challenges the admissibility of the confession on the ground that it was coerced or "induced by improper means,"* a voir dire hearing must be held for the purpose of determining whether the trustworthiness of the confession satisfies this State's legal standards. If not satisfied that the confession was made under circumstances rendering it trustworthy, *i.e.*, not produced by coercion or induced by other improper means, the trial court should bar use of the confession for any purpose.

In the present case the record does not indicate that defendant objected to the impeaching use of his statements and drawings on the ground they were coerced or otherwise induced by improper means. Defendant did not request a voir dire hearing to determine whether the statements and drawings were coerced. Neither defendant's testimony nor any other evidence suggests

that the statements and drawings were coerced or induced by force, threat, fear or promise of reward. *Cf. State v. Byrd*, 35 N.C. App. 42, 240 S.E. 2d 494 (1978); *State v. Langley*, 25 N.C. App. 298, 212 S.E. 2d 687 (1975). Under such circumstances it was altogether proper for the trial court to overrule defendant's general objection to the use of the challenged evidence for impeachment purposes without conducting further voir dire hearings.

Defendant has failed to show prejudicial error, and our review of the record has revealed no error warranting a new trial. The verdicts and judgments must be upheld.

No error.