McGEE, Chief Judge.
 

 *416
 
 Kenneth Samuel Downey ("Defendant") appeals his convictions for possession of marijuana, possession with the intent to sell and deliver cocaine, intentionally keeping and maintaining a dwelling for keeping or selling a controlled substance, possession of drug paraphernalia, selling cocaine and delivering cocaine. Defendant contends the trial court erroneously denied his pretrial motion to suppress evidence seized from his home during the execution of a search warrant, and further committed plain error by admitting the same evidence at trial. We find no error.
 

 *259
 
 I. Background
 

 Tammy Honeycutt ("Honeycutt") met with Lieutenant Creed Freeman ("Lt. Freeman") and Detective George Gillenwater ("Det. Gillenwater") of the Rockingham Police Department ("RPD") at the police station at approximately 10:00 a.m. on 26 February 2013 to discuss conducting a "controlled buy" of narcotics. A controlled buy is a process in which a confidential police informant, typically wired with an audio or video recording device, purchases an illegal substance or substances from a specific target. Confidential informants usually receive some sort of legal or financial compensation for assisting with a controlled buy. Honeycutt had worked with the RPD as a confidential informant on several prior investigations, and she contacted Lt. Freeman to indicate she "could bust [Defendant], because [Honeycutt's] son had gotten into some trouble and [she] needed some [legal] help." Honeycutt had accompanied a mutual friend to Defendant's residence several times. Honeycutt told Lt. Freeman and Det. Gillenwater she believed Defendant was selling crack cocaine from his home. Both officers regarded Honeycutt as a reliable source.
 

 Before initiating the controlled buy the same morning, and in keeping with RPD protocol, Lt. Freeman searched Honeycutt for contraband and Det. Gillenwater searched Honeycutt's vehicle. At approximately 11:00 a.m., Honeycutt attempted to call Defendant to arrange the drug buy. Defendant did not answer but called Honeycutt five minutes later and, while on speakerphone, told Honeycutt to "come on." Det. Gillenwater recognized Defendant's voice from having "dealt with [Defendant] previously[.]" Honeycutt was given forty dollars in traceable "buy-money" to
 
 *417
 
 use in the planned transaction with Defendant. She was also fitted with a wristwatch audio recording device. According to Det. Gillenwater, that "was the easiest way to try and record [the] transaction[ ]" because Honeycutt expressed concern Defendant "might notice a video recording device ... [if] he patted her down." Honeycutt was instructed to drive to Defendant's residence and relay back to the officers as much information as possible, including the address of the home, descriptions and license plate numbers of any vehicles on the premises, and number of people present in the home.
 

 Honeycutt left the police station driving alone in a gold Honda Accord, the same vehicle that Det. Gillenwater had searched. Lt. Freeman and Det. Gillenwater followed Honeycutt in a separate vehicle. The officers were not able to follow Honeycutt all the way to Defendant's residence, but they "were able to see her pull onto Hazelwood [Avenue] and see her pull into [Defendant's] yard," which was located at 114 Hazelwood Avenue. Before getting out of her vehicle, Honeycutt reported the home's address and the presence of two automobiles in the yard through the audio recording device.
 

 A man Honeycutt did not recognize came out of "a little shack in the back of [Defendant's] yard" and approached Honeycutt's car. The man asked Honeycutt if she had called first and, when she responded that she had called, he moved aside so Honeycutt could get out of the vehicle. Honeycutt knocked on the back door of Defendant's residence and Defendant let her inside. Defendant and Honeycutt sat down at a kitchen table where Honeycutt observed "a big pile of what [she] assumed to be crack cocaine" that Defendant appeared to be "in the process of bagging up." Honeycutt also observed weight scales and a revolver on the table. Defendant's front door appeared to be "barricaded shut" and Honeycutt noticed additional "drug paraphernalia stuff, scales, [and] baggies." Honeycutt gave Defendant the marked buy-money in exchange for a baggie of "what [she] assumed to be crack rock." Honeycutt put the baggie in her pocket, left Defendant's residence, and drove back to the police station, where she was patted down and debriefed. She gave Lt. Freeman and Det. Gillenwater the bag of suspected crack cocaine Defendant had sold her. Det. Gillenwater placed the bag into another clear bag, which he sealed with clear packaging tape and labeled with his initials, the date, and the case number. He placed the bag in a locked
 
 *260
 
 desk drawer.
 
 [1]
 
 Honeycutt was paid sixty dollars for participating in the controlled buy.
 
 *418
 
 While Lt. Freeman interviewed Honeycutt, Det. Gillenwater prepared an application for a warrant to search Defendant's residence. The warrant was issued and executed that afternoon. Based on Honeycutt's information that Defendant's front door was barricaded shut and that there was a firearm inside the home, members of the RPD SWAT team accompanied Lt. Freeman and Det. Gillenwater to Defendant's residence. Once the SWAT team deemed the house secure, Lt. Freeman and Det. Gillenwater entered through the back door. Defendant was inside. Lt. Freeman began searching the residence and identifying items to be seized, while Det. Gillenwater "wr[ote] down on a piece of notebook paper a general description of [each item]." Det. Gillenwater's handwritten notes were as follows:
 

 01 [-] digital scales in kitchen
 

 02 - razor blades
 

 03 - sandwich bags
 

 04 - suspected crack/cocaine
 

 05 - 53 [U.S. dollars]
 

 06 - video equipment living room
 

 07 - baggies with corners cut up in trash
 

 08 - cooking apparatus-kitchen
 

 09 - digital scales-kitchen cabinet
 

 10 - bag of money-safe in bedroom back left
 

 11 - small bag of marijuana/in flashlight/kitchen area
 

 12 - box of bullets back left bedroom
 

 13 - piece of mail desk drawer
 

 14 - small bag of weed [and] papers-desk drawer
 

 15 - .38 cal[iber] pistol
 

 Front right bedroom
 

 Money
 

 .38 cal[iber pistol]
 

 The list indicated that the first four items were removed from the "kitchen area." After Defendant was arrested and taken to the police
 
 *419
 
 station, he was given an Inventory of Items Seized Pursuant to Search standardized form, with Det. Gillenwater's handwritten notes attached. Defendant never signed the form's acknowledgment of receipt.
 

 Det. Gillenwater transported the items seized from Defendant's residence to the police station, where he placed them in evidence bags that he labeled and sealed. He secured the items in a storage locker until they could be picked up by a designated RPD property officer. Det. Gillenwater later prepared a more detailed Property Evidence Report for Defendant's case. The Property Evidence Report noted that a total of $1,163.00 in cash was seized from Defendant's residence, and indicated that only one .38-caliber handgun
 
 [2]
 
 was recovered during the 26 February 2013 search. All evidence seized from Defendant's residence, along with the formal Property Evidence Report, was turned over to RPD Detective Donovan Young on 14 March 2013.
 

 Defendant was indicted on 18 March 2013 for possession with intent to sell or deliver marijuana, possession with intent to sell or deliver cocaine, maintaining a dwelling to use, keep, or sell a controlled substance, and possession of drug paraphernalia. Additionally, Defendant was indicted on 12 May 2014 for selling cocaine and delivering cocaine.
 

 All charges against Defendant were joined for trial and tried on 3 August 2015. Defendant filed motions to suppress (1) all evidence seized from Defendant's residence during the 26 February 2013 search and (2) a custodial statement Defendant alleged he made before being read his
 
 Miranda
 
 rights. The trial court heard and denied both motions. A jury convicted Defendant on 6 August 2015 of possession of marijuana, possession with intent to sell and deliver cocaine, intentionally keeping and maintaining a dwelling house for keeping and/or selling a controlled substance, possession of drug paraphernalia,
 
 *261
 
 selling cocaine, and delivery of cocaine. Defendant received consecutive suspended sentences of 8 to 19 months' and 14 to 26 months' imprisonment and was placed on supervised probation for a period of 36 months. Defendant appeals.
 

 II Motion to Suppress
 

 A. Standard of Review
 

 Defendant first argues the trial court erred by denying his motion to suppress the evidence removed from his residence as a result of the
 
 *420
 
 26 February 2013 search. "This Court's review of an appeal from the denial of a defendant's motion to suppress is limited to determining 'whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the [trial court's] conclusions of law.' "
 
 State v. Granger
 
 ,
 
 235 N.C.App. 157
 
 , 161,
 
 761 S.E.2d 923
 
 , 926 (2014) (quoting
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 167-68,
 
 712 S.E.2d 874
 
 , 878 (2011) ). "[W]e examine the evidence ... in the light most favorable to the State[.]"
 
 State v. Hunter
 
 ,
 
 208 N.C.App. 506
 
 , 509,
 
 703 S.E.2d 776
 
 , 779 (2010).
 

 On appeal, "[t]he trial court's findings of fact regarding a motion to suppress are conclusive ... if supported by competent evidence."
 
 State v. Edwards
 
 ,
 
 185 N.C.App. 701
 
 , 702,
 
 649 S.E.2d 646
 
 , 648 (2007). In the present case, because Defendant has failed to challenge any of the factual findings in the trial court's order denying his motion to suppress evidence, those findings are binding on this Court.
 
 See
 

 State v. Elder
 
 ,
 
 232 N.C.App. 80
 
 , 83,
 
 753 S.E.2d 504
 
 , 507 (2014).
 

 "Our review of a trial court's conclusions of law on a motion to suppress is
 
 de novo
 
 ."
 
 Edwards
 
 ,
 
 185 N.C.App. at 702
 
 ,
 
 649 S.E.2d at 648
 
 (citation omitted). "Under
 
 de novo
 
 review, this Court considers the matter anew and freely substitutes its own judgment for that of the [trial court]."
 
 State v. Ward
 
 ,
 
 226 N.C.App. 386
 
 , 388,
 
 742 S.E.2d 550
 
 , 552 (2013) (citation and internal quotation marks omitted) (alteration in original). According to Defendant, the trial court erroneously denied his motion to suppress because the evidence was collected as a result of a statutory violation. "An alleged error in statutory interpretation is an error of law, and thus our standard of review for this question is
 
 de novo.
 
 "
 
 State v. Skipper
 
 ,
 
 214 N.C.App. 556
 
 , 557,
 
 715 S.E.2d 271
 
 , 272 (2011) (citation and quotation marks omitted). We review
 
 de novo
 
 the trial court's conclusion that "Defendant was properly noticed as to the ... items seized at [his] residence."
 
 [3]
 

 B. Analysis
 

 Defendant contends the trial court erred in denying his motion to suppress evidence collected from his residence on the grounds that the inventory list prepared by Det. Gillenwater, as required by
 
 *421
 
 N.C. Gen. Stat. § 15A-254, was unlawfully vague and inaccurate in describing the items seized. This argument is without merit.
 

 Defendant maintains his motion to suppress the evidence should have been granted under N.C. Gen. Stat. § 15A-974, which requires suppression if,
 
 inter alia
 
 , the evidence "is obtained as a result of a substantial violation of the provisions of [Chapter 15A of our General Statutes]." N.C. Gen. Stat. § 15A-974(a)(2) (2015). In determining whether a particular violation is "substantial," a court must consider all the circumstances, including:
 

 a. The importance of the particular interest violated;
 

 b. The extent of the deviation from lawful conduct;
 

 c. The extent to which the violation was willful; [and]
 

 d. The extent to which exclusion will tend to deter future violations of this Chapter.
 

 Id.
 

 However,
 

 [e]ven where a substantial violation has occurred, ... evidence will only be suppressed where there is a causal connection between the violation and the evidence obtained. [I]f the challenged evidence would
 
 *262
 
 have been obtained regardless of the violation ..., such evidence has not been obtained 'as a result of' such illegality and is not, therefore, to be suppressed by reason of G.S. 15A-974(2) [sic].
 

 State v. Vick
 
 ,
 
 130 N.C.App. 207
 
 , 219,
 
 502 S.E.2d 871
 
 , 878-79 (1998) (citation omitted) (alteration in original).
 

 Defendant argues the evidence gathered from his residence was obtained in substantial violation of N.C.G.S. § 15A-254, which provides that "[u]pon seizing items pursuant to a search warrant, an officer must write and sign a receipt itemizing the items taken and containing the name of the court by which the warrant was issued." N.C. Gen. Stat. § 15A-254 (2015). If items "were" seized from a person, the receipt must be given to that person.
 

 Id.
 

 If items "are" taken from a place or vehicle, "the receipt must be given to the owner, or person in apparent control of the premises or vehicle if the person is present; or if he is not, the officer must leave the receipt in the premises or vehicle from which the items were taken."
 

 Id.
 

 Defendant asks us to consider the level of descriptiveness required of an itemized receipt under N.C.G.S. § 15A-254, a matter of first impression, and to hold that the inventory receipt at issue in this
 
 *422
 
 case was "vague and inaccurate and fail[ed] to satisfy the requirements of North Carolina law[.]" However, because we conclude that evidence is not obtained "as a result of" a violation of N.C.G.S. § 15A-254, rendering N.C.G.S. § 974(a)(2) inapplicable, we need not determine whether Det. Gillenwater's receipt in fact violated N.C.G.S. § 15A-254.
 

 The requirement that evidence be obtained "as a result of" a violation of Chapter 15A to warrant suppression under N.C.G.S. § 974(a)(2) means, at minimum, that the evidence was "obtained
 
 as a consequence
 
 of the officer's unlawful conduct ... [and] would not have been obtained
 
 but for
 
 the unlawful conduct of the investigating officer."
 
 See
 

 State v. Pearson
 
 ,
 
 356 N.C. 22
 
 , 32,
 
 566 S.E.2d 50
 
 , 56 (2002) (citation omitted) (emphases in original). Thus, to prevail in the present case, Defendant must show that the evidence seized during the 26 February 2013 search of his residence would not have been obtained
 
 but for
 
 the alleged violation of N.C.G.S. § 15A-254.
 
 See
 
 id.
 

 (noting that "[a] defendant bears the burden of presenting facts in support of his motion to suppress." (citation and internal quotation marks omitted)). Defendant has failed to make such a showing.
 

 By definition, evidence must be obtained before an inventory of items seized may be prepared. The plain language of N.C.G.S. § 15A-254 recognizes as much, providing that "an officer must write and sign a receipt itemizing the
 
 items taken
 
 " only "
 
 [u]pon seizing items
 
 pursuant to a search warrant."
 
 Cf.
 
 N.C. Gen. Stat. § 15A-252 (2015) (providing officer must read warrant and furnish a copy of the warrant application and affidavit "
 
 [b]efore undertaking any search or seizure
 
 [.]" (emphasis added)).
 
 See also
 

 Pearson
 
 ,
 
 356 N.C. at 32
 
 ,
 
 566 S.E.2d at 56
 
 (concluding N.C.G.S. § 15A-974(a)(2) did not require suppression of evidence where "the collection of the evidence obtained ... was not causally related to the statutory violations ... because [the statutes requiring return of inventory of evidence obtained from a person subject to nontestimonial identification procedures] focus on policies to be followed
 
 after
 
 samples are taken ... [and] are not related to
 
 obtaining
 
 the samples." (emphases in original)). Additionally, N.C.G.S. § 15A-254 uses the past tense-"if items
 
 were
 
 taken"-in setting forth procedures that apply where property is seized from a person directly, as occurred in Defendant's case.
 

 In
 
 State v. Richardson
 
 ,
 
 295 N.C. 309
 
 ,
 
 245 S.E.2d 754
 
 (1978), a defendant argued that evidence seized during a search of his home should have been excluded based in part on law enforcement officers' failure to comply with N.C. Gen. Stat. § 15A-223(b), which provides that in the context of consent searches, "[u]pon completion of the search, the officer must make a list of the things seized, and must deliver a receipt
 
 *423
 
 embodying the list to the person who consented to the search[.]" N.C. Gen. Stat. § 15A-223(b) (2015). Our Supreme Court rejected the defendant's contention, holding that
 
 N.C. Gen. Stat. § 974
 
 (a)(2) was inapplicable because
 

 [i]t [was] clear that the items seized and later offered into evidence were not "obtained
 
 *263
 
 as a result of" violations of Chapter 15A. No causal connection exist[ed] between the failure to follow the requirements of G.S. 15A-223(b) and the acquisition of the items seized from [the] defendant's residence and toolbox.
 

 295 N.C. 309
 
 , 324,
 
 245 S.E.2d 754
 
 , 764 (1978). We conclude that the same reasoning applies to alleged violations of N.C.G.S. § 15A-254.
 

 This is consistent with prior decisions in which this Court has declined to suppress evidence based on actual or alleged violations of N.C.G.S. § 15A-254. In
 
 State v. Fruitt
 
 ,
 
 35 N.C.App. 177
 
 ,
 
 241 S.E.2d 125
 
 (1978), an officer executed a search warrant on the defendant's premises while the defendant was not at home. The officer seized marijuana found during the search and then left the premises without leaving either a copy of the warrant or a receipt of items taken as required by N.C.G.S. § 15A-252 and N.C.G.S. § 15A-254, respectively. This Court held the officer violated the explicit terms of both statutes,
 
 [4]
 
 but that N.C.G.S. § 15A-974(a)(2) was nevertheless inapplicable, because "[the] violations occurred only after the marijuana had been lawfully seized, [and thus] ... the marijuana was not 'obtained as a result' of these violations[.]"
 
 35 N.C.App. at 180
 
 ,
 
 241 S.E.2d at 127
 
 . We also observed that "[t]he primary interest protected by the prohibition against unreasonable searches and seizures is the individual's reasonable expectation of privacy."
 

 Id.
 

 at 181
 
 ,
 
 241 S.E.2d at 127
 
 . The officer's violation of N.C.G.S. § 15A-254, we concluded, "had no adverse impact whatever on that primary interest, [because it] occurred after the search was completed."
 

 Id.
 

 In
 
 State v. O'Kelly
 
 ,
 
 98 N.C.App. 265
 
 ,
 
 390 S.E.2d 717
 
 (1990), the defendant alleged N.C.G.S. § 15A-974(a)(2) mandated suppression of
 
 *424
 
 evidence collected from his residence and storage unit in part because he was not given inventories of the items taken, in violation of N.C.G.S. § 15A-254. We again rejected that argument, observing that the law enforcement officer "exercised due diligence in attempting to comply with the requirement that the defendant be supplied with the inventory of seized property,"
 

 id.
 

 ,
 
 98 N.C.App. at 272
 
 ,
 
 390 S.E.2d at 721
 
 , and mailed a copy of the itemized receipt to the defendant within a week of the search and seizure. We affirmed the trial court's conclusion that because the officer "substantially complied with the provisions of Article 11 of North Carolina General Statute 15A ... [there was no] ground or reason to exclude or suppress evidence seized [during] the incident search."
 

 Id.
 

 ,
 
 98 N.C.App. at 273
 
 ,
 
 390 S.E.2d at 721-22
 
 .
 

 We disagree with Defendant's contention that "[a]llowing evidence to be admitted because it was not seized 'as a result' of [a violation of N.C. Gen. Stat. § 15A-254 ] would undercut the purpose of the statute" and authorize law enforcement officers to "ignore the [statute's] dictates[.]" Defendant is mistaken in his assertion that "[t]he clear purpose of [ N.C.G.S. § 15A-254 ] is to ... establish a process by which the owner of the property is notified [of the items seized]." N.C.G.S. § 15A-254 does not operate as a notice requirement in the discovery process. Instead, the statute prescribes procedures to be followed
 
 after
 
 property has been seized which promote accountability for items so obtained. Defendant himself appears to acknowledge the statute's
 
 post hoc
 
 operation, noting that "[another] purpose of
 
 N.C. Gen. Stat. § 15-254
 
 is to create a record of the
 
 items seized
 
 [.]" (emphasis added) Defendant further observes that the statutory requirements "must be met ... after a search is completed."
 

 "In interpreting statutes, all statutes dealing with the same subject matter must be construed
 
 in pari materia
 
 , as together constituting one law, and harmonized to give effect to each."
 
 In re R.L.C.
 
 ,
 
 179 N.C.App. 311
 
 , 317,
 
 635 S.E.2d 1
 
 , 4 (2006) (citation and internal quotation marks omitted). Accordingly,
 
 *264
 
 in considering the purpose and effect of N.C.G.S. § 15A-254, we look to other provisions in Chapter 15A's Article 11, which governs search warrants. Article 11 defines a search warrant as "a court order and process directing a law-enforcement officer to search designated premises ... for the purpose of [1]
 
 seizing designated items
 
 and [2]
 
 accounting for any items so obtained
 
 to the court which issued the warrant." N.C. Gen. Stat. § 15A-241 (2015) (emphases added). This is instructive in the present case. It demonstrates that Article 11 encompasses procedures to be followed both before and after evidence is obtained, and bolsters our conclusion that N.C.G.S. § 15A-254 concerns post-search accountability, not the collection of evidence.
 
 *425
 
 The suppression of illegally obtained evidence is rooted in the "individual's right to be free from unreasonable searches and seizures ... [and is] based on a defendant's reasonable expectation of freedom from government intrusion."
 
 See
 

 State v. Joe
 
 ,
 
 222 N.C.App. 206
 
 , 211-12,
 
 730 S.E.2d 779
 
 , 783 (2012) (citation and internal quotation marks omitted). This interest is recognized throughout Article 11.
 
 See
 
 ,
 
 e.g.
 
 , N.C. Gen. Stat. § 15A-242 (2015) (providing that search warrant must be supported by probable cause); N.C. Gen. Stat. § 15A-246 (2015) (requiring that search warrant "establish with reasonable certainty the premises, vehicles, or persons to be searched[.]"); N.C. Gen. Stat. § 15A-249 (2015) (requiring officer to give notice of identity and purpose before entering premises to be searched); N.C. Gen. Stat. § 15A-251 (2015) (permitting entry by force only if certain conditions are met); N.C. Gen. Stat. § 15A-252 (2015) (providing that executing officer must read warrant and give copy of warrant application and affidavit to person to be searched before undertaking any search or seizure). However, as we observed in
 
 Fruitt
 
 , not all Article 11 subsections implicate "the individual's reasonable expectation of privacy."
 
 Fruitt
 
 ,
 
 35 N.C.App. at 181
 
 ,
 
 241 S.E.2d at 127-28
 
 . It follows that not all Article 11 subsections afford a basis for suppression of evidence under N.C.G.S. § 15A-974(a)(2), regardless of whether a violation of the subsection in fact occurs.
 

 It seems clear that the itemized receipt requirement in N.C.G.S. § 15A-254 is not intended to protect an individual's reasonable expectation of privacy, since it applies only after search and seizure have occurred. We note that N.C.G.S. § 15A-254 does not specify an exact time at which or by which an itemized receipt must be given to the person searched. Where items are seized from a person, nothing in the statute requires that the person be given an itemized receipt,
 
 e.g.
 
 , before the officers leave the premises or before the person is taken into custody. It provides only that if (1) items are taken from a place or vehicle,
 
 and
 
 (2) the owner or apparent owner is not present, then an officer must leave the receipt on the premises or in the vehicle. Otherwise, the statute is silent about when exactly a person must be given a receipt of items seized. The statute also does not require affirmative acknowledgement of receipt from
 
 the recipient
 
 of the inventory list; it provides only that
 
 the officer
 
 must sign the receipt.
 
 [5]
 
 The receipt must contain "the name
 
 *426
 
 of the court by which the warrant was issued." In keeping with N.C.G.S. § 15A-241, the inventory receipt requirement serves "the purpose of ... accounting for any items ... obtained to the court which issued the warrant."
 

 To hold that evidence may be obtained "as a result of" a violation of N.C.G.S. § 15A-254 would disregard the distinctions throughout Article 11 between individual rights incident to search and seizure of property, and procedures to be followed after property is seized. Construing the statutes together, we conclude N.C.G.S. § 15A-254 applies only after evidence has been obtained and does not implicate the right to be free from unreasonable search and seizure. In turn, because evidence cannot be obtained "as a result of" a violation of N.C.G.S. § 15A-254, N.C.G.S. § 15A-974(a)(2) is inapplicable to either alleged
 
 *265
 
 or actual N.C.G.S. § 15A-254 violations.
 

 We do not hold that it is impossible for a law enforcement officer to violate N.C.G.S. § 15A-254.
 
 See
 

 Fruitt
 
 ,
 
 supra
 
 , (finding law enforcement officer violated explicit language of the statute by failing to leave a receipt on the premises after conducting a search and seizing contraband in the absence of the property owner). We also do not speculate about what recourse may be available where a violation occurs. We hold only that any such violation is not a basis for the suppression of evidence under N.C.G.S. § 15A-974(a)(2), the only statute Defendant cites in support of this argument. Defendant's contention that the evidence in the present case was obtained "as a result of" a violation of N.C.G.S. § 15A-254 fails as a matter of law. This argument is overruled.
 

 III. Admission of Evidence
 

 A. Standard of Review
 

 In the alternative, Defendant argues the trial court committed plain error by admitting "illegally obtained" evidence. "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial ... [which] had a probable impact on the jury's finding that the defendant was guilty."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citations and internal quotation marks omitted).
 

 B. Analysis
 

 Defendant contends it was plain error to admit the evidence seized from his residence because it was "illegally obtained" and, "[h]ad the trial court prevented the introduction of this evidence, [Defendant] would not have been convicted." In making this argument, Defendant essentially reasserts his argument that the evidence was unlawfully obtained because "[t]he [inventory] list created by [Det.
 

 *427
 
 Gillenwater] fell substantially below the legal standard required by N.C. Gen. Stat. § 15A-254." As discussed above, Defendant has failed to demonstrate that any evidence was illegally obtained as a result of a violation of N.C.G.S. § 15A-254. Defendant does not advance any additional argument in support of his contention that the evidence was illegally obtained (and thus erroneously omitted).
 

 Further, even assuming
 
 arguendo
 
 that the evidence taken from Defendant's residence was erroneously admitted, the error did not amount to plain error. Our Supreme Court has held that "[s]ubstantial evidence of a defendant's guilt is a factor to be considered in determining whether [an] error was a fundamental error rising to plain error."
 
 State v. Moore
 
 ,
 
 366 N.C. 100
 
 , 108,
 
 726 S.E.2d 168
 
 , 174 (2012) ;
 
 see also
 

 State v. Black
 
 ,
 
 328 N.C. 191
 
 , 199,
 
 400 S.E.2d 398
 
 , 403 (1991) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). In the present case, the State presented substantial evidence of Defendant's guilt, largely in the form of mutually corroborative testimony from Honeycutt, Det. Gillenwater, and Lt. Freeman.
 
 See
 

 State v. Locklear
 
 ,
 
 322 N.C. 349
 
 , 358,
 
 368 S.E.2d 377
 
 , 383 (1988) (noting that, in considering whether evidence is substantial, the evidence is viewed in the light most favorable to the State, and the credibility of its witnesses is a question for the jury). Defendant did not present any evidence at trial. Additionally, while defense counsel objected to the introduction into evidence of a number of individual items seized from Defendant's home, counsel did not object to the admission of a RPD property evidence report which listed all evidence seized from Defendant's residence, in greater and more precise detail than did the itemized inventory receipt prepared on the day of the search. Taken together, the State's evidence was "clearly sufficient to support a reasonable inference that [Defendant committed] the crime[s] charged."
 
 State v. Smith
 
 ,
 
 40 N.C.App. 72
 
 , 80,
 
 252 S.E.2d 535
 
 , 540 (1979). We find nothing in the record suggesting a "miscarriage of justice" occurred in this case.
 
 See
 

 State v. Perkins
 
 ,
 
 154 N.C.App. 148
 
 , 152,
 
 571 S.E.2d 645
 
 , 648 (2002) (citation omitted). Accordingly, we conclude Defendant received a trial free from error.
 

 NO ERROR.
 

 Judges CALABRIA and STROUD concur.
 

 [1]
 

 Det. Gillenwater testified that the evidence was stored until it could be mailed to the State Bureau of Investigation. The state crime lab received the evidence on 18 March 2013.
 

 [2]
 

 Defendant emphasizes that Det. Gillenwater's handwritten inventory, prepared during the search, contained two separate references to a .38 caliber gun, whereas the later-prepared property evidence report showed only one gun was removed from Defendant's home.
 

 [3]
 

 Defendant does not challenge the trial court's other conclusions of law,
 
 i.e.
 
 , that (1) the officers properly executed the 26 February 2013 search warrant at Defendant's home; (2) Defendant was properly noticed as to the search warrant under N.C. Gen. Stat. § 15A-252, and (3) none of Defendant's state or federal constitutional rights were violated by the seizure of his property.
 

 [4]
 

 We note that
 
 Fruitt
 
 is factually distinguishable from Defendant's case. In
 
 Fruitt
 
 , the officer violated the express language in N.C.G.S. § 15A-254 requiring that a copy of the itemized receipt be left on the premises
 
 if the owner or apparent owner is not present at the time of the search
 
 . By contrast, in the present case, there was no explicit violation of N.C.G.S. § 15A-254. Defendant was present at the time of the search, and he was given a list of items seized after being taken into custody. Additionally, N.C.G.S. § 15A-254 does not, on its face, require any specific level of descriptiveness.
 

 [5]
 

 As the State noted during the hearing on Defendant's motion to suppress, although the standardized Inventory of Items Seized Pursuant to Search form includes an acknowledgment of receipt signature block (which, in this case, Defendant did not sign), N.C.G.S. § 15A-254 itself does not require a signature from the recipient of the itemized inventory list.