IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-30

Filed 15 October 2024

Watauga County, Nos. 22 CRS 363048; 23 CRS 4

STATE OF NORTH CAROLINA

v.

JOHNNY WAYNE ELLISON, Defendant.

Appeal by Defendant from judgment entered 13 June 2023 by Judge R. Gregory Horne in Watauga County Superior Court. Heard in the Court of Appeals 27 August 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Matthew Bream, for the State.*
>
> *Yoder Law PLLC, by Jason Christopher Yoder, for Defendant.*

GRIFFIN, Judge.

Defendant Johnny Wayne Ellison appeals from a judgment entered upon a guilty plea made after the trial court denied Defendant's motion to suppress evidence. Defendant challenges both the procedure used to obtain the search warrant and the substance of the underlying affidavit and warrant. We hold the trial court did not err by denying Defendant's motion to suppress.

## I.  Factual and Procedural Background

On 8 December 2022, the Watauga County Sheriff's Department received a

report of a break-in. The caller noted that two Stihl chainsaws and a red wagon were stolen during the break-in. A trail camera on the property recorded two men, one of which was wearing a Tractor Supply Company hat, wheeling the chainsaws through the woods in the wagon. Watauga County officers were able to identify Defendant as the individual wearing the hat because of their prior experience with him. The following day, Detective Lukas Smith, the lead investigator assigned to the break-in, applied for a warrant to search Defendant's residence.

The warrant specified 303 Tanner Road as the address to be searched and described the premises as:

> Residence, curtilage, vehicles, and any outbuilding located at 303 Tanner Rd. Boone NC (see pictures of map and photos of residence). Residence is a single wide with white siding and logs piled in the driveway.

The warrant also included an aerial photograph of a property and a ground-level photograph of a white single-wide mobile home with a pile of logs in front of the building. The address in the warrant was taken from a North Carolina Department of Motor Vehicles document which reported Defendant's address. Detective Rebecca Russel took the ground-level photograph while investigating a different larceny reported the same day as the break-in.

The same day, Detective Smith attempted to go to 303 Tanner Road to execute the search warrant. He utilized Detective Russel's photograph and the aerial photograph to navigate to the white mobile home but realized upon arrival that he

was actually at 310 Tanner Road. After realizing the residence shown in the photographs attached to the warrant actually depicted 310 Tanner Road, not 303, Detective Smith called the magistrate's office for further direction. Magistrate John Green directed him to return to the magistrate's office where they would amend the warrant as it had not been filed in the Clerk of Court's office yet. Detective Smith did so and, upon arrival at the office, he and Magistrate Green crossed out and initialed the ground-level photograph, the aerial photograph, and the portion of the property description referencing the pile of logs. Detective Smith then handed the warrant over to other officers for execution.

While executing the search warrant at the correct address, Officers found and seized four chainsaws, two of which were Stihl brand. Defendant allegedly made incriminating statements about the chainsaws to Detective Rollins while law enforcement executed the warrant. On 12 December 2022, Detective Smith conducted an interview with Defendant, during which Defendant admitted to stealing the chainsaws.

On 3 January 2023, a Watauga County grand jury indicted Defendant for breaking and entering and larceny. On 12 June 2023, Defendant moved to suppress evidence obtained from the search authorized by the amended warrant. Defendant's motion came on for hearing in Watauga County Superior Court on 13 June 2023 before the Honorable Gregory Horne. The court received testimony from Detective Smith before making oral findings and denying Defendant's motion. Defendant then

pled guilty to breaking and entering, larceny, and attaining habitual felon status while preserving his right to appeal from the trial court's order denying his motion to suppress. Defendant timely appeals.

## II. Analysis

Defendant argues the trial court erred by denying his motion to suppress evidence obtained from the search of his property pursuant to the amended warrant. Defendant presents arguments challenging both the substance of the warrant and the underlying affidavit as well as the procedural process leading up to the search. We hold the trial court properly denied Defendant's motion to suppress.

## A. Standard of Review

We review a trial court's denial of a motion to suppress to determine "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Thorpe*, 253 N.C. App. 210, 212, 799 S.E.2d 67, 70 (2017) (citation and internal marks omitted). Where a defendant does not challenge findings of fact, "they are deemed to be supported by competent evidence and are binding on appeal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citing *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984)).

In contrast, we review the trial court's conclusions of law de novo. *See State v. Richardson*, 385 N.C. 101, 179, 891 S.E.2d 132, 192 (2023) ("[W]hether those findings

of fact in turn support the trial court's conclusions of law, which are reviewed de novo." (citation and internal marks omitted)). We review "'an alleged error in statutory interpretation . . . de novo.'" *State v. Downey*, 249 N.C. App. 415, 420, 791 S.E.2d 257, 261 (2016) (citing *State v. Skipper*, 214 N.C. App. 556, 557, 715 S.E.2d 271, 272 (2011)); *State v. Hanton*, 175 N.C. App. 250, 255, 623 S.E.2d 600, 604 (2006). "Under a de novo review, the Court considers the matter anew and freely substitutes its own judgment for that of the lower [court]." *Morris v. Rodeberg*, 385 N.C. 405, 409, 895 S.E.2d 328, 331 (2023) (citation and internal marks omitted).

## B. Substantive Issues

Defendant argues the warrant and underlying affidavit authorizing the search of Defendant's home were substantively defective for three reasons: (1) "[t]he search warrant failed to identify the property with reasonable certainty[;]" (2) "[t]he affidavit was insufficient to establish probable cause to search [Defendant's home] because the sole piece of evidence that [Defendant] lived at the address was a DMV record of unknown origin and there was no evidence to corroborate that he currently lived at [that address][;]" and (3) "[t]he description of the property to be seized was insufficiently described in the warrant."

The trial court made numerous findings of fact and conclusions of law addressing Defendant's arguments about the substance of the warrant:

> That Detective Smith completed a search warrant application and went before Magistrate Green on December 9, 2022, swore out that warrant, and Magistrate

Green issued the warrant on the 9th day of December 2022 at 1:42 p.m. That as part of the investigation, a separate detective had gone out to the scene and taken a photograph of the residence that she believed at the time to be 303 Tanner Road. That the search warrant listed 303 Tanner Road, Boone North Carolina 28607 as the residence to be seized. It indicated, well the facts indicate that based upon a DMV search of [Defendant's] driver's license, that that is the address listed as his residence, again, 303 Tanner Road, Boone. The photograph that Detective Russell took was attached to the search warrant. Having heard testimony and having found probable cause to support a search of the residence, Magistrate Green assigned and issued the warrant.

. . . .

With regard to the steel[1], I read that exact same provision before you read that, Mr. Farb with regard to the television set. And the difference that I see, there's case law out there that indicates that particularly drugs are contraband, so that's a non-issue with regard to that. There's no serial number attached to drugs, we all understand that. But with regard to stolen property, there is some flexibility with regard to that.

First of all, law enforcement doesn't have any prior knowledge of the items. Victims may or may not have any identifying information to include serial numbers on such items, and our case law does recognize that. I would distinguish Mr. Farb's provision there in that he says a color television. There's no brand listed, for example, a Vizio 52-inch television. I believe that that would be a different situation and our case law would be flexible enough to allow that description. In this case the detective listed the information that the victim had provided, that is, two steel chain saws. He did include the brand, type. I don't know what the 015 is, but he did provide that as well, a steel 015 chain saw in one instance, and then the

---

[1] To clarify, the chainsaws at issue are Stihl brand which sounds like steel when spoken.

American wagon.

So the [c]ourt would find based upon its understanding of the case law, that that was sufficient to list the property. In this case it's correct that there were additional items that were seized. However, the evidence is that it was returned to [Defendant] upon determining that those items did not belong to the victim.

The second issue, or the third issue, I guess, that the [c]ourt found that is relevant was the connection of the residence that was to be searched to the probable cause in the case. Again, going back to Mr. Farb's book, I'm looking at page 479, indicates direct observation is not the only way to connect a place with a crime and evidence to be seized. For example, assuming that the information is timely, [c]ourt cases recognize the proceeds from a burglary, breaking or entering or a robbery will likely be found in one, a suspect's home or other place where the suspect is residing or from which the suspect may sell the proceeds, et cetera, and cites a couple of cases with regard to that.

In this case we have a trail camera that captured still images. That the images clearly showed folks that were known to law enforcement, one being Mr. Watson who was not a defendant in this case, but then also [Defendant]. . . . That the camera showed that within a relevant time, the last known secure date, that [Defendant] was on the property and was in physical possession of items that were reported as stolen by the victim. That the residence was within a relatively short period, a relatively short distance of what's believed to be [Defendant's] home. In this case the estimate is a mile and a half. That they upon leaving the property, were on foot pulling the wagon.

And looking at the four corners of the warrant, the probable cause expressed there, I don't disagree that certainly additional information would be relevant, but the [c]ourt is charged not with determining what additional evidence would be appropriate. The [c]ourt is charged with looking at the four corners and determining whether or not that

presented the Magistrate at that time with reasonable cause to believe that items of stolen property may be found, that these items of stolen property may be found on the property. The [c]ourt would find that there was sufficient evidence before the Magistrate at that time.

This [c]ourt finds evidence that the Magistrate had probable cause grounds to issue the search warrant for 303 Tanner Road for the items identified as stolen property. That the subsequent amendment did not add any additional information to the warrant, it simply redacted items, and as such these redactions did not actually invalidate the warrant. And that there was sufficient probable cause under our existing law to connect the defendant's residence to these matters to warrant issuance of the search warrant of the residence as issued by Magistrate Green.

The [c]ourt therefore would find that there has been no statutory Constitutional violation of [D]efendant's rights with regard to the search warrant and would respectfully deny the motion to suppress.

## 1. *Identification of Real Property*

Defendant contends "the search warrant failed to identify the property with reasonable certainty as required by" law. We disagree.

"Both the Fourth Amendment to the Constitution of the United States and article I, section 20 of the North Carolina Constitution protect private citizens against unreasonable searches and seizures." *State v. Johnson*, 378 N.C. 236, 244, 861 S.E.2d 474, 483 (2021) (citing *State v. Otto*, 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012)); *see also State v. Miller*, 282 N.C. 633, 638, 194 S.E.2d 353, 356 (1973) ("There is no variance between Fourth Amendment requirements and the law of this State in

regard to search warrants." (citation omitted)). A valid search warrant "must contain a designation sufficient to establish with reasonable certainty the premises, vehicles, or persons to be searched." N.C. Gen. Stat. § 15A-246(4) (2021). A search warrant is not ipso facto invalid because "the address described in the search warrant [] differ[s] from the address of the residence actually searched." *State v. Moore*, 152 N.C. App. 156, 160, 566 S.E.2d 713, 715–16 (2002) (citing *State v. Walsh*, 19 N.C. App. 420, 423, 199 S.E.2d 38, 40–41 (1973)); *see also U.S. v. Palmer*, 667 F.2d 1118, 1120 (4th. Cir. 1981) (holding a search warrant which described the premises to be searched as "Carl's Carpet Mart" to be sufficient despite the actual search having been executed at "Miller-Arrington," a business sharing a wall with the carpet mart); *State v. Woods*, 26 N.C. App. 584, 587, 216 S.E.2d 492, 494 (1975) (holding "[an] Aqua and White mobile home owned by James Luther Bateman about 60 yards beyond Joe Kays Camp Ground the first dirt road to the left off RPR 1215 the first house trailer on the right" to be sufficient despite there being another aqua and white mobile home in the vicinity). While an executing officer's previous knowledge of the premise to be searched is relevant to our analysis, *State v. Cloninger*, 37 N.C. App. 22, 26, 245 S.E.2d 192, 195 (1978), it is not dispositive.

Here, the search warrant's description was sufficient to establish with reasonable certainty the premise to be searched. Initially, the search warrant described the premises to be searched as "[r]esidence, curtilage, vehicles, and any outbuilding located at 303 Tanner Rd. Boone NC (see pictures of map and photo of

residence). Residence is a single wide with white siding and logs piled in driveway." The warrant also included ground and aerial photographs of 310 Tanner Road. While the part of the description referring to the logs was inaccurate due to its placement alongside the photographs, the warrant did in fact correctly list the address to be searched—303 Tanner Road. Moreover, it was not unreasonable that officers would conflate the two residences as the premises are located in rural Watauga County. Like the mobile homes in *Woods*, 303 Tanner Road and 310 Tanner Road are within the same vicinity, and both have white mobile homes on the property. Here, however, Detective Smith immediately knew he was at the wrong address upon arrival because of the address numbering conventions in Watauga County[2] and quickly attempted to remedy the discrepancy by returning to the magistrate's office.

As the description here included the correct address, which provides reasonable certainty, Defendant's contention is without merit and the trial court did not err by concluding the search warrant was valid.

### 2. *Probable Cause to Search 303 Tanner Road*

Defendant contends "[t]he affidavit was insufficient to establish probable cause to search 303 Tanner Road because the sole piece of evidence that [Defendant] lived at the address was a DMV record of unknown origin and there was no evidence to

---

[2] In Watauga County, even-numbered addresses are assigned to properties on the right side of the street while odd-numbered addresses are assigned to properties on the left. Thus, 310 Tanner Road is on the right side of the street while 303 Tanner Road is on the left.

corroborate that [Defendant] currently lived at the residence." We disagree.

Section 15A-244 provides that an application for a warrant must contain "[a] statement that there is probable cause to believe that items subject to seizure under [N.C. Gen. Stat. §] 15A-242 may be found in or upon a designated or described place[,]" and that the application must also have "[a]llegations of fact supporting the statement." N.C. Gen. Stat. § 15A-244(2)–(3) (2021). Said statements "must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe the items are in the places . . . to be searched[.]" N.C. Gen. Stat. § 15A-244(3). A magistrate's duty when faced with a search warrant application is well established:

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis [] for concluding" that probable cause existed.

*State v. Benters*, 367 N.C. 660, 664, 766 S.E.2d 593, 598 (2014) (cleaned up). A finding of "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 664–65, 766 S.E.2d at 598 (citation and internal marks omitted). To that end, "a magistrate is entitled to draw reasonable inferences from the material supplied to him by an applicant for a

warrant," and we give great deference to the "magistrate's determination of probable cause[.]" *Id.* at 665, 766 S.E.2d at 598 (citation and internal marks omitted).

"An affidavit 'must establish a nexus between the objects sought and the place to be searched.'" *State v. Eddings*, 280 N.C. App. 204, 210, 866 S.E.2d 499, 504 (2021) (citing *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990)). We utilize a totality of the circumstances inquiry when determining whether a nexus exists. *Id.* at 210–11, 866 S.E.2d at 504 (citation and internal marks omitted). Additionally, when a search warrant is directed at a private residence, "probable cause 'means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and those objects will aid in the apprehension or conviction of the offender.'" *State v. Bailey*, 374 N.C. 332, 335, 841 S.E.2d 277, 280 (2020) (citing *State v. Campbell*, 282 N.C. 125, 128–29, 191 S.E.2d 752, 755 (1972)).

Here, Detective Smith swore to the following facts:

> [Defendant] lives in very close proximity to the address of the reported larceny and can be seen on video footage carrying a chainsaw away from the scene and is pulling an American Red Flyer Wagon loaded with another chainsaw and a bucket of small items, all taken from the address. [Defendant]'s address in the DMV is 303 Tanner Road Boone, NC 28607, the premise to be searched.
>
> . . . .
>
> Given the short timeframe that has elapsed it is probable that the chainsaws and wagon reported and listed above are likely at the nearby home of [Defendant] located at 303

> Tanner Rd. In your affiants training and experience items
> are kept until suspects can sell them for cash or trade them
> for things of value.

Giving due deference to the magistrate's determination, we hold this information sufficient to support the trial court's conclusion of law that the chainsaws could be found at Defendant's residence. Detective Smith gleaned Defendant's address from his driver's license, which Defendant had recently provided to another Watauga County Sheriff's Deputy during a traffic stop. Notably, Defendant was wearing the same Tractor Supply Company hat during the traffic stop that he was wearing when captured by the trail camera.

Based on the address shown on Defendant's driver's license, Detective Smith testified Defendant's residence was only within a mile to a mile-and-a-half of the reported breaking and entering. The same facts also implicate Defendant's residence because, as Detective Smith affirmed, stolen goods are often "kept until suspects can sell them for cash or trade them for things of value." Considering Defendant was captured on camera transporting the stolen goods via a child's wagon, while wearing the same hat that he was wearing during a recent traffic stop at which he presented his driver's license with 303 Tanner Road listed as his address, it was reasonable for the magistrate to conclude the fruits of the crime were held at his residence a short distance away.

Thus, as the trial court's findings of fact support its conclusion of law that there was sufficient evidence before the magistrate to support a finding of probable cause

that the chainsaws could be found at Defendant's residence, Defendant's contention is without merit.

### 3. *Description of Property*

Defendant next contends "[t]he description of the property to be seized was insufficiently described in the warrant." We disagree.

A search warrant "must contain . . . [a] description or a designation of the items constituting the object of the search and authorized to be seized." N.C. Gen. Stat. § 15A-246(5) (2021). A description is sufficient "when it enables the officer executing the warrant reasonably to ascertain and identify the items to be seized." *State v. Kornegay*, 313 N.C. 1, 16, 326 S.E.2d 881, 893 (1985) (citing *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982)). The description particularity depends on the nature of the items to be seized. *Id.* at 16, 326 S.E.2d at 893–94 (citation omitted). To that point, a warrant's description of property is sufficient if it is "as specific as the circumstances and nature of the activity that is under investigation." *Id.* at 16, 326 S.E.2d at 894 (citation omitted).

Generic descriptions of contraband, such as illegal narcotics or gambling equipment, are sufficient given the nature of the objects. *See generally State v. Conrad*, 81 N.C. App. 327, 331, 344 S.E.2d 568, 571 (1986) (analyzing a warrant's description which specified "drugs" and "stolen goods"). Stolen property on the other hand, being "generally [] innocuous except for the extrinsic circumstance" of being stolen, requires a more definite description. *Id.* at 330, 344 S.E.2d at 571. But,

"where the circumstances have made an accurate description impossible, the courts have occasionally relaxed the more stringent specificity requirements regarding stolen goods." *Id.* at 331, 344 S.E.2d at 571.

Here, the warrant described the chainsaws, among other property for which Defendant does not contest the description, as: (1) One STIHL Chainsaw; (2) One STHL 015; and (3) One American Red Flyer Wagon. These descriptions were drafted based upon the only information provided to law enforcement by the victims of the larceny. While the descriptions could be more specific, they are nonetheless sufficient as they indicate the objects sought, the brand of the items, and, in one instance, the model number. Thus, as the circumstances here made a more precise description impossible, given the victim's inability to provide more information, we hold the trial court did not err in concluding, as a matter of law, the description to be sufficient.

While Defendant is correct that additional, legally obtained chainsaws were seized, this is not dispositive of the description's sufficiency. The circumstances required law enforcement to seize and investigate the innocuous chainsaws to determine which chainsaws were the fruits of Defendant's crime. *See State v. Louchheim*, 36 N.C. App. 271, 278–79, 244 S.E.2d 195, 201 (1978) ("And we find, further, that the circumstances required that the officers executing the search warrant inspect certain innocuous records and documents in order to locate and seize the ones which tended to show the suspected criminal activity.").

Accordingly, Defendant's argument is without merit.

## C. Procedural Issues

Defendant argues the warrant authorizing the search of Defendant's home was procedurally defective for four reasons. Initially, Defendant contends the redaction process used after the failed execution of the warrant at 310 Tanner Road was done without statutory authority and therefore requires suppression of the evidence obtained from the search. Defendant also contends, in the alternative, that if the warrant could be amended, it was nonetheless defective because: (1) the warrant "failed to comply with N.C. Gen. Stat. § 15A-246(1) because it was not signed with the time and date of issuance[;]" (2) "the amendments in this case were made pursuant to additional information never taken under oath[;]" and (3) "the magistrate violated N.C. Gen. Stat. § 15A-245(a) because he failed to record or summarize the additional information he received from Officer Smith[.]"

With respect to the procedural issues raised by Defendant, the trial court orally made extensive conclusions of law:

> Again, [D]efendant has timely objected to that, arguing that there is no basis in the law to allow amendment, and that any changes in essence voided or invalidated the warrant.
>
> The [c]ourt has made research with regard to this issue. I found no case law directly on point. It is correct, the statutory provisions in 15A do not address amendment or redactions to any search warrant. So the [c]ourt must look to the statutory framework and exercise its reasoning to make a determination as to the validity. It appears to the [c]ourt that there was nothing added to the search warrant.

It is clear to the [c]ourt based upon other case law that indicates that they're bound by the four corners of the search warrant, that any additional information that was considered by the judicial official in determining whether or not to execute the warrant must be either, number one, placed under oath and subject to recording, or is written into the record by the judicial official that is receiving that information. Obviously it must be sworn to. In this case there's no evidence that anything was added to the search warrant, save the initials that were put on there; instead there were redactions from the search warrant.

15A-246 does indicate that in addition to the signature, the judicial official must place a time and date of issuance above his signature. It appears to the [c]ourt that that is important, relevant to 15A-248 in that 15A-248 requires that a search warrant must be executed within 48 hours from the time of issuance. Any warrant not executed within that time limit is void and must be marked not executed and returned without unnecessary delay to the clerk of the issuing court.

So in this case Magistrate Green had affixed the time of 1:42. It is correct based upon the redactions that I see and the testimony that I have received, that no additional time was updated. It appears to the [c]ourt, or the [c]ourt would find that it was within an hour of the initial issuance that these redactions and initials were placed onto the search warrant. But it is clear that the [c]ourt and the law enforcement officer would be bound by that 48–hour rule, and that 48–hour time frame would relate back to 1:42 p.m. The evidence before the [c]ourt is that the search warrant was executed well within that 48–hour period, so that is not an issue.

With regard to this matter then, the [c]ourt would find that there is no question that in noticing that although the listed address was correct, the photograph was incorrect. That Detective Smith opted instead of simply proceeding to the listed address after realizing his error, he called the Magistrate judge and returned to the Magistrate's office in

order to correct his mistake by way of redaction. That the judicial official met with him, allowed the redaction and initialed those portions. Again, the [c]ourt notes that nothing was added to the search warrant. There were simply redactions from the search warrant to clarify the incorrect photograph that was initially attached.

The [c]ourt would find that while likely not – the [c]ourt would find that while best practice likely would lead the Magistrate to have signed and affixed a new time to the warrant, the [c]ourt will find based upon the [c]ourt's viewing of 15A and those requirements, and case law in general reflecting that it was within the judicial official's discretion at that time to authorize the redaction, and by his initials authorized that the search warrant as redacted remained valid.

 . . . .

This [c]ourt finds evidence that the Magistrate had probable cause grounds to issue the search warrant for 303 Tanner Road for the items identified as stolen property. That the subsequent amendment did not add any additional information to the warrant, it simply redacted items, and as such these redactions did not actually invalidate the warrant. And that there was sufficient probable cause under our existing law to connect [D]efendant's residence to these matters to warrant issuance of the search warrant of the residence as issued by Magistrate Green.

The [c]ourt therefore would find that there has been no statutory Constitutional violation of [D]efendant's rights with regard to the search warrant and would respectfully deny the motion to suppress.

## 1. *Redactions*

With respect to Defendant's contention that the redaction process invalidated the warrant, we disagree. Defendant is correct that chapter 15A does not address a

process for amending warrants. Nonetheless, the underlying affidavit was substantively sufficient to support the magistrate's finding of probable cause and therefore sufficient to support the warrant's issuance. Moreover, the trial court correctly found that no information was added to the warrant—only redacted from it. Defendant argues this constitutes an "amended" warrant. This is just one way to frame the issue. Another way, as the State argues, is to frame the issue as a redacted warrant, for which we have case law to guide our analysis. Regardless of the way in which the issue is framed, we are confronted with the inclusion of inaccurate pictures in a warrant which, upon discovery, led to the swearing officer, in conjunction with the magistrate, making a good-faith attempt to correct the inaccurate information therein.

We are guided by two principles in our analysis that counsel us to look at the substance of the issue rather than how a party chooses to frame it. First, that "'courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner.'" *State v. Brody*, 251 N.C. App. 812, 820, 796 S.E.2d 384, 390 (2017) (citing *State v. Riggs*, 328 N.C. 213, 222, 400 S.E.2d 429, 434–35 (1991)). To that end, we remain cognizant of the Court's duty to refrain from elevating form over substance. *See, e.g., State v. Newborn*, 384 N.C. 656, 657, 887 S.E.2d 868, 870 (2023) ("We follow our long-standing principle of substance over form when analyzing the sufficiency of an indictment."). We find these principles applicable to the case before us.

The State argues our holding in *State v. Jackson*, 220 N.C. App. 1, 727 S.E.2d 332 (2012), should guide our analysis. There, we addressed a situation where officers intentionally made false statements of material fact in an affidavit while applying for a search warrant. *Id*. at 15–16, 727 S.E.2d at 333–34. At the trial court, the defendant moved for and was summarily denied appropriate relief. *Id*. at 11, 727 S.E.2d at 331. On appeal, the defendant argued "the affidavit executed by Officer Harris contained false statements made in bad faith and that, in the event that the affidavit was redacted in such a manner as to remove these false statements, the affidavit did not suffice to support the required determination of probable cause." *Id*. at 13, 727 S.E.2d at 332. We determined which of the statements contained in the affidavit were false, removed those statements, and then analyzed whether the remaining information within the affidavit was sufficient to show probable cause. *Id*. at 15–20, 727 S.E.2d at 333–36. We concluded it was not. *Id*. at 20, 727 S.E.2d at 336.

Similarly, in *Franks v. Delaware*, the Supreme Court of the United States set forth law addressing circumstances where officers, like those in *Jackson*, intentionally make false statements in bad faith when swearing out an affidavit. 438 U.S. 154 (1978). The Court held that, to attack the validity of an affidavit, a defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth," but "[a]llegations of negligence or innocent mistake are insufficient." *Id*. at 171–72. Also relevant here, the Court held that the probable cause requirement

of the Fourth Amendment does not require "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay[.]" *Id.* at 165.

Detective Smith did not include the pictures in bad faith or with reckless disregard for the truth, but rather included them because another Watauga County officer incorrectly thought she was taking a picture of the correct address. This is not akin to the intentional falsehoods made by law enforcement in *Jackson* and *Franks*. Rather, this is analogous to hearsay. Moreover, Detective Smith made a good faith attempt to remedy the warrant's inaccuracies prior to executing it on Defendant's residence. We also reiterate that Detective Smith called and sought guidance from Magistrate Green prior to taking any action after discovering the discrepancy. Detective Smith then did as the magistrate directed. Thus, we cannot say his conduct rises to the level of the officers in *Jackson* and *Franks*. Being so, we also cannot conclude the slight aberration from the normal warrant application and execution process here violated Defendant's rights or rendered the warrant invalid, as, without the inclusion of the pictures, the warrant and underlying affidavit were sufficient. In so concluding, we do not elevate the form of the affidavit and warrant over the substance of the probable cause submitted to the magistrate. Accordingly, the trial court properly concluded the redaction was within the magistrate's discretion and Defendant's argument is without merit.

### 2. N.C. Gen. Stat. § 15A-246(1)

Defendant contends the warrant "failed to comply with N.C. Gen. Stat. § 15A-246(1) because it was not signed with the time and date of issuance." We disagree.

Section 15A-246(1) provides that "[a] search warrant must contain [t]he name and signature of the issuing official with the time and date of issuance above his signature[.]" N.C. Gen. Stat. § 15A-246(1) (2021). While the inclusion of the word "must" in a statute "ordinarily . . . [is] deemed to indicate a legislative intent to make the provision of the statute mandatory, and a failure to observe it fatal to the validity of the purported action, it is not necessarily so and the legislative intent is to be derived from a consideration of the entire statute." *State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 662 (1978).[3] Section 15A-248 provides, in conjunction with section 15A-246(1), that "[a] search warrant must be executed within 48 hours from the time of issuance. Any warrant not executed within that time is void and must be marked 'not executed' and returned without unnecessary delay to the clerk of the issuing court." N.C. Gen. Stat. § 15A-248 (2021). "Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each[.]" *Town of Blowing Rock v. Gregorie*, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956). Reading the two relevant statutes *in pari materia*, we conclude the purpose of section 15A-246(1) is to provide a record of the

---

[3] Defendant's appellate brief quotes the same language. However, Defendant's brief fails to include the limiting clause "it is not necessarily so and the legislative intent is to be derived from a consideration of the entire statute."

time of issuance against which the forty-eight-hour time limit for execution contained in section 15A-248 may be measured against.

Here, the warrant was issued and executed within the statutorily prescribed forty-eight-hour window. Contradicting Defendant's argument is the fact that the warrant was dated on the day of issuance, which was the same day as the redaction and execution. Furthermore, as the warrant was signed by Magistrate Green at the time of the issuance, the forty-eight-hour time limit to execute the warrant would have related back to the initial issuance, not the time of the redaction. The trial court found as much. Moreover, both Detective Smith and Magistrate Green initialed the redactions, after having already signed the warrant approximately twenty minutes earlier, thus providing other evidence of the necessary signatures. *See State v. Brannon*, 25 N.C. App. 635, 636, 214 S.E.2d 213, 214–15 (1975) (holding a magistrate signing a warrant in the wrong place to be "a mere technical deviation"). The trial court also found, and we agree, that this argument is a non-issue as the warrant was executed within the initial forty-eight-hour period and did not prejudice Defendant.

Thus, Defendant's argument is without merit.

### 3. *Additional Information*

Defendant argues "the amendments in this case were made pursuant to additional information never taken under oath," and "the magistrate violated N.C. Gen. Stat. § 15A-245(a) because he failed to record or summarize the additional information he received from [Detective] Smith." We disagree.

Section 15A-245 provides "information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant by the issuing official." N.C. Gen. Stat. § 15A-245(a) (2021). When a magistrate determines there has been a sufficient showing of probable cause, and the requirements of Article 11 have been met, the magistrate is required to issue the warrant. N.C. Gen. Stat. § 15A-245(b).

To the extent that additional information was given to the magistrate, it was simply that the photographs depicted the wrong address, a fact not bearing on whether probable cause existed to issue the warrant in the first place. Moreover, the record and transcript reveal that the erroneous photographs, and the parts of the description referring to the pile of logs and the photographs, were struck with a pen and initialed by both Detective Smith and Magistrate Green. Thus, there is competent evidence to support the trial court's finding of fact that "the subsequent amendment did not add any additional information to the warrant, it simply redacted items[.]" This finding, in turn, supports the trial court's conclusion of law that "these redactions did not actually invalidate the warrant." Logically, if additional information was not provided to Magistrate Green, then the requirements of section 15A-245(a) are not triggered. The same line of reasoning applies to the recording requirement in section 15A-245(a). Therefore, Magistrate Green was statutorily

required to issue the warrant.

Accordingly, Defendant's contention is without merit.

### III.   Conclusion

We hold the trial court did not err by denying Defendant's motion to dismiss. As "[t]here is no variance between the Fourth Amendment requirements and the law of this State in regard to search warrants[,]" *Miller*, 282 N.C. at 638, 194 S.E.2d at 356 (1973) (citing *State v. Vestal*, 278 N.C. 561, 577, 180 S.E.2d 755, 766 (1971)), we hold the search conducted pursuant to the warrant did not violate Defendant's rights against unreasonable searches and seizures protected by the Fourth Amendment of the United States Constitution and article I, section 20 of the North Carolina Constitution.

AFFIRMED.

Judges HAMPSON and CARPENTER concur.